IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

DAVID WAYNE ANDERSON,            )
           Petitioner,            )            Case No. 7:22-cv-00272
                             )
                             )            MEMORANDUM OPINION & ORDER
v.            )
                             )            By:    Joel C. Hoppe
                             )                    United States Magistrate Judge
HAROLD CLARKE,            )
           Respondent.            )

Petitioner David Anderson is serving 205 years in custody of the Virginia Department of Corrections ("VDOC") after a Virginia jury convicted him on one count of possessing child pornography and 30 counts of possessing child pornography, second or subsequent offense. *See* ECF No. 1, at 1.[1] Anderson, proceeding pro se, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254, primarily asserting that those convictions violate his Sixth Amendment right to counsel because his court-appointed trial attorney made multiple errors investigating, defending, and appealing Anderson's case. ECF No. 1, at 22–25 ¶¶ C–M(5); *see also id.* ¶¶ A–B (challenging trial court's denial of motions to substitute counsel and for a continuance). Respondent Harold Clarke, VDOC's Director, filed a Rule 5 Answer and Motion to Dismiss. ECF No. 12. Anderson timely replied. ECF No. 19. The matter is before me by the parties' consent under 28 U.S.C. § 636(c)(1). ECF No. 8.

## I. Standard of Review

A person in custody pursuant to the judgment of a state court claiming the right to be released from a state sentence must show "that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The prisoner ultimately must prove the

---

[1] Pinpoint citations to documents filed on the electronic docket use the header page numbers generated by CM/ECF and the exhibit labels assigned by the filing party.

facts supporting his grounds for federal habeas relief by a preponderance of the evidence. *See Holland v. Jackson*, 542 U.S. 649, 654–55 (2004) (per curiam). On the respondent's motion to dismiss, however, "the familiar standards in Rule 12(b)(6) of the Federal Rules of Civil Procedure apply." *Walker v. Kelly*, 589 F.3d 127, 138 (4th Cir. 2009) (noting that the Rules Governing Section 2254 Cases in the United States District Courts ("§ 2254 R.") incorporate "the FRCP 'to the extent that they are not inconsistent with any statutory provisions or these rules'" (quoting current § 2254 R. 12)). Thus, a motion to dismiss a habeas petition challenges whether the petition's factual allegations state a claim upon which relief can be granted under 28 U.S.C. § 2254.[2] *Id.*; *Walker v. True*, 399 F.3d 315, 320 (4th Cir. 2005).

To survive a motion to dismiss, "the petition and any attached exhibits," § 2254 R. 4, "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *accord Kelly*, 589 F.3d at 139. A claim is "facially plausible" when the well-pled facts "allow[] the court to draw the reasonable inference that the [respondent] is liable for the misconduct alleged" under the governing law. *Iqbal*, 556 U.S. at 678; *cf. Folkes v. Nelsen*, 34 F.4th 258, 268 (4th Cir. 2022) ("[E]ach ground for relief [in a § 2254 petition] must be tied to a specific factual basis supporting that claim."). This "standard is not akin to a probability requirement, but it asks for more than a sheer possibility," *Iqbal*, 556 U.S. at 679 (quotation marks omitted), that the state prisoner is in custody in violation of the specific federal constitutional right(s) identified in his petition. *See Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977); *Folkes*, 34 F.4th at 268–69 (explaining that "the petitioner is responsible for identifying" the allegedly unconstitutional conduct "that the federal court is to review" and that

---

[2] "Because the Commonwealth filed its answer to [Anderson's] petition and its motion to dismiss simultaneously, it technically should have filed the motion under Rule 12(c) as one for judgment on the pleadings. [I] will construe the Commonwealth's motion as a motion under Rule 12(c) which is assessed under the same standard that applies to a Rule 12(b)(6) motion." *Kelly*, 589 F.3d at 139 (citations omitted).

"once the petitioner has identified specific conduct in his petition," the "court must consider [only] claims as they are presented in the petition, reviewing them under the applicable standard"); *cf. United States v. White*, 366 F.3d 291, 297 (4th Cir. 2004) ("A court cannot summarily dismiss a [habeas] petitioner's allegations simply because the petitioner has yet to prove them by a preponderance of the evidence.").

Determining whether a § 2254 petition clears this threshold is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense," *Iqbal*, 556 U.S. at 679. *See Kelly*, 589 F.3d at 138–39. In doing so, the court accepts as true all well-pled facts and construes those facts and all reasonable inferences in the petitioner's favor. *Kelly*, 589 F.3d 139. However, the court is "not obliged to accept allegations that represent unwarranted inferences, unreasonable conclusions, or arguments, or that contradict matters properly subject to judicial notice or by exhibit." *Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014) (quotation marks omitted). Such matters include "material from the record" in the petitioner's state court proceedings, "including affidavits and evidence presented at trial," as well as the state courts' orders and decisions. *Kelly*, 589 F.3d at 139; *see* § 2254 R. 5(c)–(d). Summary dismissal is not appropriate when the prisoner alleges facts that, accepted as true and not "directly contradicted" by the record, *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005), would entitle them to federal habeas relief on a particular claim presented in their § 2254 petition. *See True*, 399 F.3d at 320; *cf. Folkes*, 34 F.4th at 263 ("[T]he district court impermissibly altered the claim presented in Folkes'[s] § 2254 petition and thus granted relief on grounds that were not properly before it.").

## II. The Legal Framework

Section 2254 authorizes federal courts to "entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the

ground that [the person] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The statute, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, sets several limits on the court's power to grant such applications. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *see generally* 28 U.S.C. § 2254(b)–(e). First, a federal court cannot grant an application "unless it appears that" the petitioner has "exhausted the remedies available" to them in state court. 28 U.S.C. § 2254(b)(1)(A); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). However, an application "may be denied on the merits[] notwithstanding" the petitioner's failure to properly exhaust all available state court remedies. 28 U.S.C. § 2254(b)(2).

Second, "an additional restriction applies" where the "application includes a claim that has been 'adjudicated on the merits in State court proceedings.'" *Cullen*, 563 U.S. at 181 (quoting 28 U.S.C. § 2254(d)). "Under § 2254(d), that application 'shall not be granted with respect to such a claim unless the adjudication of the claim,'" *id.* (quoting § 2254(d)) (cleaned up), resulted in a decision that was:

> (1) contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2). Finally, the federal court's scope of review under § 2254(d) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen*, 563 U.S. at 181. Thus, when the petitioner "fail[ed] to present enough evidence" to make their case to the state court, *Burt v. Titlow*, 571 U.S. 12, 24 (2013) (Sotomayor, J., concurring), the federal habeas court cannot presume the state court "unreasonably" rejected the merits of the petitioner's claim, *id.* at 21–22 (Alito, J., for the Court); *accord Holland*, 542 U.S. at 654–55.

## II. Procedural History

4

Anderson used to live in Washington County, Virginia. In August 2018, Amanda Miller and her husband, Justin, lost their home and moved into Anderson's house. Resp't's Br. Ex. C, *Anderson v. Commw. of Va.*, No. 644-20-3, slip op. 2 (Va. Ct. App. Dec. 17, 2020) (per curiam) (*Anderson I*) (denying Anderson's petition for direct appeal), ECF No. 13-3, at 2.[3] Anderson "'stopped living' at the residence the day after the Millers moved in," but he told them to stay "'and take care of the cats and the dogs.'" *Id.* Anderson "left various desktop computers, laptops, tablets, and other electronic devices in the residence. On August 28, [Amanda] was admitted into the 'hospital for a period of time.'" *Id.* The same day, Justin called the Washington County Sheriff's Office to report "an 'animal complaint.'" *Id.* Sergeant Karen Tolbert drove out to the house. *Id.*

"Based on a conversation with Justin, Tolbert seized four personal computers, three laptops, a tablet, an external hard drive, and a compact disk." *Id.* Captain James Blevins "created a digital copy of [one] laptop's hard drive and examined it for child pornography using a computer software program." *Id.* The search returned "numerous images on the laptop," which Blevins then "filtered . . . based on 'skin tone' to 'narrow [his] search.'" *Id.* "After excluding images depicting people who were clearly adults, Blevins found '60-some' images depicting 'what appeared to be young males under the age of 18 engaged in sexual activity or displaying nudity.'" *Id.* The Commonwealth relied on forty of those images to prosecute Anderson under Virginia Code §

---

[3] The Virginia Court of Appeals initially denied Anderson's petition for direct appeal by order entered on November 23, 2020. *Id.* at 1; *see also* Resp't's Br. Ex. A, *Anderson v. Dir., Va. Dep't of Corrs.*, No. CL 20-908, slip op. 2 (Washington Cnty. Cir. Ct. Dec. 10, 2020) (*Anderson II*) (final order denying Anderson's first petition for state writ of habeas corpus), ECF No. 13-1, at 2. That order "was mailed to an incorrect email address" for Anderson's attorney. *Anderson I*, slip op. 1. On December 17, 2020, a judge on the Virginia Court of Appeals vacated the earlier order and entered a new per curiam order denying Anderson's petition for appeal, *id.*, and affirming his convictions and sentences, *see id.* at 6–7. The per curiam order is attached to Respondent's brief as Exhibit C, ECF No. 13-3.

18.2-374.1:1(A)–(B) (2017).[4] *See id.* at 3. In October 2018, a Washington County grand jury indicted Anderson on one count of knowingly possessing child pornography in violation of § 18.2-374.1:1(A), and thirty-nine counts of knowingly possessing "child pornography, second or subsequent offense," in violation § 18.2-374.1:1(B). *See id.*[5] Each offense allegedly occurred "[o]n or about February 1, 2018, to August 25, 2018." Pet'r's Ex. 26, *Commw. v. Anderson*, Nos. CR18-989 to CR18-1028, Order Am. Indictment (Sept. 5, 2019), ECF No. 1-1, at 144–45.

The circuit court appointed Charles Bledsoe, Esq., to represent Anderson. Shortly before trial, Anderson filed his own motion to appoint new counsel. *See Anderson II*, slip op. 6. At a hearing on November 6, 2019, Mr. Bledsoe noted Anderson "had expressed dissatisfaction" with his services. *Id.* Anderson told the circuit court "that he wanted a computer expert to identify the ages of the people in the images," but that Mr. Bledsoe "had opined that it was too late to get one." *Id.* "When asked to elaborate, Anderson stated that he believed an expert could identify the websites of origins of the images which were on a 'corrupted' hard drive." *Id.* Mr. Bledsoe explained "that in his years of experience handling these types of cases, computer experts do not generally help in retrieving deleted images" and he "did not believe an expert would be about to

---

[4] Under § 18.2-374.1:1(A)–(B), "[a]ny person who knowingly possesses child pornography is guilty of a Class 6 felony," *id.* § 18.2-374.1:1(A), and "[a]ny person who commits a second or subsequent violation of subjection A is guilty of a class 5 felony," *id.* § 18.2-374.1:1(B). "'[C]hild pornography' means sexually explicit visual material which utilizes or has as a subject an identifiable minor. An identifiable minor is a person who was a minor at the time the visual image was created, adapted, or modified; or whose image as a minor was used in creating, adapting or modifying the visual depiction; and who is recognizable as an actual person by the person's face, likeness or other distinguishing characteristic[.]" *Id.* § 18.2-374.1(A). "[I]t may be inferred by text, title or appearance that a person who is depicted as or presents the appearance of being less than 18 years of age in sexually explicit visual material is [in fact] less than 18 years of age." *Id.* § 18.2-374.1:1(F). The Commonwealth is not required to prove "the actual identity of the identifiable minor" depicted in an image. *Id.* § 18.2-374.1(A).

[5] Each count was assigned its own case number and involved a single image "linked" to that specific case. *Id.* The grand jury also indicted Anderson on several counts of sexual battery against minor children left in his care. *See* Pet'r's Ex. 8, Aff. of Charles Bledsloe, Esq. ¶¶ A–G (Oct. 23, 2020), ECF No. 1-1, at 24–30; Pet'r's Ex. 11, *Commw. v. Anderson*, Nos. CR18-983 to CR18-1028, Def.'s Mot. to Sever (Mar. 14, 2019), ECF No. 1-1, at 39–40. The circuit court severed those charges and set them for separate trial. They are not directly at issue here.

identify the websites of origin." *Id.* The circuit court denied Anderson's motion for new counsel. *Id.* The judge opined that Mr. Bledsoe was "more than competent" to represent Anderson, given that he was "[o]ne of the longer practicing lawyers with a great deal of expertise in these cases in both Federal and state court." *Id.* He also expressed confidence that Mr. Bledsoe had "done everything he can to get this matter ready for trial [next] Tuesday." *Id.*

A.   *Jury Trial*

Anderson went to trial on November 12, 2019. Blevins, whom the circuit court "accepted as an expert in computer forensics," testified that "Anderson had the only named account" on the laptop that Blevins had searched using the software program. *See Anderson II*, slip op. 2 & n.4. Blevins also "located e-mails associated with an e-mail address linked to Anderson on the computer, as well as pictures and videos of Anderson[] and documents with [Anderson's] name on them. Blevins testified that he did not locate items with anyone else's name on the laptop." *Id.* at 2. Blevins testified that he found "60-some pictures of suspected child pornography" stored "in unallocated space" on this laptop's hard drive. He explained that "unallocated space" stores files that have been "delete[d] . . . from the computer's recycle bin," but have not been permanently removed from the computer's hard drive. *See id.* ("Unallocated space on a hard drive is space that is outside the normal file structure."). Blevins also testified that he "reviewed the laptop's 'web browser history' from February to July of 2018" and found that "the word 'boys' appeared in [Anderson's] 'web browser history' or 'the pornography' 'websites' 308 times." *Anderson I*, slip op. 3; *see Anderson II*, slip op. 3 ("Blevins then testified that he also searched Anderson's browser history for the word 'boys' and discovered 308 websites containing that word."). "After his arrest, [Anderson] told Justin on a phone call that he had 'gone to a site' called 'teenboys.com'; but [he] claimed that 'it was all eighteen.'" *Anderson I*, slip op. 3.

Blevins "located [the] 40 images for which Anderson had been indicted. Blevins testified that the images depicted actual people, not virtual or animated figures, engaging in sexual activity." *Anderson II*, slip op. 3. Blevins "then described each of the 40 photographs," eight of which "had watermarks and could be linked to specific websites." *Id.* Three of those "websites contained disclaimers that all of their models were over the age of eighteen, but Blevins testified that such disclaimers are not always accurate." *Anderson I*, slip op. 3; *see also id.* at 6–7. He "acknowledged that some of the images only revealed genitalia, with 'no faces,' and that it could be 'difficult' to distinguish a sixteen year old from an eighteen year old based solely on 'skin tone.' Nevertheless, Blevins maintained that skin tone, aging spots, body and pubic hair, and the size of the hips, penis, and arms differed on a 'young' person." *Id.* at 2. The jury also observed each of the 40 images. *Anderson II*, slip op. 3.

Mr. Bledsoe "moved to strike the evidence at the end of the Commonwealth's case-in-chief, arguing that the Commonwealth had failed to prove that [any] images depicted persons [actually] under the age of eighteen," *Anderson I*, slip op. 3, because the jury could not "determine by appearance alone whether the images depicted minors," *Anderson II*, slip op. 14. *See also Anderson II*, slip op. 7–8 (noting Anderson's trial strategy focused on "challenging Code § 18.2-374.1:1(F), which permits the fact finder to infer from appearance that a person presenting as a minor in sexually explicit images is a minor"). The trial court denied that motion. The jury convicted Anderson on one count of possessing child pornography, first offense, and thirty counts of possessing child pornography, second or subsequent offense. *Anderson I*, slip op. 3. It acquitted Anderson on the nine remaining counts.

Mr. Bledsoe then "moved to set aside the jury's [guilty] verdicts, arguing that [Anderson's] convictions were 'unconstitutional' under *Ashcroft v. Free Speech Coalition*, 535

U.S. 234 (2002), because they were based solely on the appearance of the persons depicted in the images, without corroborating evidence" that they were in fact minors. *Anderson I*, slip op. 3. The trial court denied Anderson's motion and sentenced him to 205 years' active incarceration. *Id.*; *see* Pet'r's Ex. 9, *Commw. v. Anderson*, Nos. CR18-989, -990, -992 to -995, -998, -1000 to -1003, -1006 to -1009, -1011 to -1014, -1016 to -1025, Sentencing Order (Apr. 28, 2020), ECF No. 1-1, at 31–36.

B.    *Direct Appeal*

Mr. Bledsoe appealed Anderson's convictions to the Virginia Court of Appeals. *See Anderson I*, slip op. 1. On direct appeal, Anderson "challeng[ed] the sufficiency of the evidence to support his convictions," *id.* at 1; *see also id.* at 4, 6–7, and argued that Virginia Code § 18.2-374.1:1(F), which permits a fact finder to infer by a person's "appearance" that an actual "person who is depicted as or presents the appearance of being less than 18 years of age in any sexually explicit visual material is [in fact] less than 18 years of age," *id.* at 4 (quoting Va. Code § 18.2-374.1:1(F)), was unconstitutional as applied "when the subject of an image 'is not obviously below the age of 18,'" *see id.* He argued that "'*Ashcroft* imposes a constitutional requirement [in those cases] that the Commonwealth introduce additional corroborative evidence' demonstrating that the images depicted 'actual' minors 'as opposed to adult actors'" who merely looked like minors, *id.* at 4–5. Thus, Anderson maintained that "because the persons in the images" underpinning "his convictions 'on all counts'" "did not appear to 'fall into a marked extreme' of age, the jury could not reasonably infer from the images alone that the persons depicted were younger than eighteen." *Id.* at 4 (brackets omitted).

The Virginia Court of Appeals rejected Anderson's constitutional argument. *See id.* at 5–6. "*Ashcroft* involved a First Amendment challenge to statutes that, unlike Code § 18.2-374.1(A),

broadened the definition of child pornography to include sexually explicit images that appeared 'to depict minors but were produced without using any real children.'" *Id.* at 5 (quoting *Ashcroft*, 535 U.S. at 239). "Those statutes 'captured a range of depictions, sometimes called virtual child pornography, which include[d] computer-generated images.'" *Id.* (quoting *Ashcroft*, 535 U.S. at 241 (other quotation marks and brackets omitted)). *Ashcroft* "held that [such] statutes were unconstitutionally overboard because they criminalized material that was neither obscene nor sufficiently related to the abuse of a minor [person] during its production process." *Id.* (citing *Ashcroft*, 535 U.S. at 240, 246, 250). And, while *Ashcroft* "limit[ed] a state's power to regulate the production and possession of virtual child pornography, the opinion also reaffirmed the state's power to criminaliza the production and possession that depicts actual minors." *Id.* Moreover, "[c]ontrary to [Anderson's] argument" on appeal, "*Ashcroft* [did] not place limits, conditions, or restrictions on *how* a prosecutor proves that an image depicts an actual minor." *Id.*

The Virginia Court of Appeals held that § 18.2:374.1:1(F)'s "permissive inference" that a person who looks younger than 18 years old is in fact younger than 18 years old complied with *Ashcroft* because it did "not expand the definition of child pornography to include virtual child pornography or computer-generated images; instead, it simply allows . . . the Commonwealth to prove its case with circumstantial evidence. Regardless of whether the Commonwealth presents direct or circumstantial evidence, however, it still must prove that an image depicts an 'actual' minor." *Id.* at 5–6 (citation omitted). "A jury may determine whether pornographic images depict actual minors simply by looking at the images and considering the appearance of the persons depicted." *Id.* at 6 (quotation marks omitted). "To the extent that the subjects are not obviously under the age of eighteen, or the defendant presents rebuttal evidence suggesting that the subjects are adults" over 18 years old, "the matter becomes a question of fact for the jury." *Id.* (quotation

10

marks omitted). In those cases, the Virginia Court of Appeals will reverse the jury's finding "only when it is plainly wrong or without evidentiary support." *Id.* (citing Va. Code § 8.01-680); *see also id.* at 1–2 (articulating Virginia's standard of review for insufficient-evidence claims).

In Virginia, a criminal conviction "is presumed to be correct and will not be disturbed unless it is plainly wrong or without evidence to support it." *Id.* at 1 (quoting *Smith v. Commonwealth*, 821 S.E.2d 543, 548 (Va. 2018) (other quotation marks omitted)). In cases where the defendant argues that the evidence presented at trial is not sufficient to support a conviction, the reviewing court, considering the evidence "in the light most favorable to the Commonwealth as the prevailing party at trial," *id.* at 2 (cleaned up) (quoting *Gerald v. Commonwealth*, 813 S.E.2d 722, 723 (Va. 2018)), asks "whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *id.* at 1–2 (quoting *Pijor v. Commonwealth*, 808 S.E.2d 408, 413 (Va. 2017) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979))). If the answer is yes, then the reviewing court must conclude that the evidence adequately supports the challenged conviction. *See id.* at 2.

The Virginia Court of Appeals denied Anderson's petition for appeal under this standard. *Id.* at 1, 6–7. It noted Blevins's testimony "that each of the [40] images taken from [Anderson's] laptop depicted 'what appeared to be young males under the age of 18 engaged in sexual activity or displaying nudity.'" *Id.* at 6. "The images largely depict[ed] persons without pubic, body, or facial hair. Many of the persons ha[d] small arms and legs and narrow hips and shoulders, indicating that they had not yet reached puberty." *Id.* at 6 (footnote omitted). And, while "some of the individuals depicted appear[ed] to be markedly younger than others, the record demonstrate[d] that the jury examined each of the forty photos and [found] that thirty-one of them depicted minors." *Id.* Notably, the jury acquitted Anderson on three counts linked to images "depict[ing]

individuals with pubic hair." *Id.* at 6 n.3. The Virginia Court of Appeals also cited Anderson's "internet search history [showing] that he frequently searched for pornography using the keyword, 'boys.'" *Id.* at 6. Finally, "[w]hile several of the images came from websites with disclaimers that the models were over the age of eighteen, Blevins explained that those disclaimers [were] not always accurate." *Id.* "[T]he jury, which had the opportunity to view the images, was not required to believe the websites' disclaimers." *Id.* at 7. The Virginia Supreme Court refused Anderson's petition for appeal in August 2021, *see* Resp't's Br. 2, and his petition for rehearing *en banc* in December 2021, *see* Pet'r's Ex. 25, Letter from C. Bledsoe to D. Anderson (Dec. 15, 2021), ECF No. 1-1, at 143. Mr. Bledsoe did not ask the United States Supreme Court to review Anderson's convictions on direct appeal. *See* Pet. ¶ 9(h); Pet'r's Ex. 25 ("This concludes my representation of you . . . . I have taken this case as far as I can. I certainly regret the outcome but there is nothing further I can do.").

C.      *State Habeas Proceedings*

On June 5, 2020, while his direct appeal was pending, Anderson filed his first petition for a writ of habeas corpus in Washington County Circuit Court. *See Anderson II*, slip op. 2. Mr. Bledsoe responded to Anderson's pro se petition and submitted an affidavit addressing each of Anderson's claims alleging that Mr. Bledsoe provided ineffective assistance of counsel ("IAC") during trial. Bledsoe Aff. ¶¶ A–G; *see also Anderson II*, slip op. 7, 9–13 (discussing the same). Anderson's first state habeas petition "appeared" to raise fourteen claims for relief:

> A.      that [Anderson] was denied the right to counsel of his choosing when the court denied his motion for new counsel prior to trial and that he was denied the effective assistance of counsel where counsel failed to retain a computer expert for trial;
>
> B.      that he received the ineffective assistance of counsel because counsel failed to call an investigator as a witness at trial;
>
> C.      that he received the ineffective assistance of counsel because counsel failed to cross examine Justin Miller;

12

D.     that he received ineffective assistance of counsel because counsel failed to call neighbors and other residents of the home as witnesses at trial;

E.     that he received ineffective assistance of counsel where counsel failed to enter phone calls between Anderson and Miller into evidence;

F.     that the Commonwealth elicited false testimony when Miller advised law enforcement that he accessed the images;

G.     that the search warrant obtained to search the laptop was illegal;

H.     that he had two clean desktops, and the laptop was accessible to other users;

I.     that he had no knowledge of the deleted images, and the people in the images were 18 or older;

J.     that he received the ineffective assistance of counsel where counsel failed to investigate and verify that the people in the images were 18 or older;

K.     that he received ineffective assistance of counsel where counsel failed to turn over discovery;

L.     that all of the images depicted people 18 or older and were from verifiable websites;

M.     that [Blevins's] opinion as to the age of the people in the images was insufficient to prove that the people in the pictures were minors; and

N.     that the jury handed down inconsistent verdicts.

*Anderson II*, slip op. 3–4; *see id.* at 15–16. On December 10, 2020, the circuit court granted the Commonwealth's motion to dismiss and denied Anderson's habeas petition. *See id.* at 16.

The circuit court held that State Claims A, G, H, I, L, M, and N were procedurally barred under the Virginia Supreme Court's decision in *Slayton v. Parrigan*, 205 S.E.2d 680 (Va. 1974), at least to the extent those claims raised evidentiary issues or trial errors, because Anderson could have pursued them on direct appeal, but he did not. *See id.* at 6, 12, 15–16. Additionally, to the extent Anderson raised any of those "issue[s] in his pending direct appeal," they would be resolved "by the Court of Appeals and [were] barred in habeas." *Id.* at 15 n.8 (citing *Henry v. Warden*, 576 S.E.2d 495, 496 (Va. 2003)) (State Claim L); *see also id.* at 15 n.9 (State Claim M).

The circuit court rejected Anderson's IAC claims (State Claims A–E, F, J & K) on the merits under *Strickland*'s familiar two-part standard. *See generally id.* at 5–15. Anderson did not

develop an adequate factual basis for State Claims B, D, G, or K, and therefore "failed to carry his *Strickland* burden," *id.* at 9 (State Claim B), "to show both that his attorney's performance was deficient and that he was prejudiced as a result," *id.* at 5 (emphasis omitted) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). *See id.* at 10–11, 13–15 (State Claims D, G & K). Anderson failed to demonstrate deficient performance and/or prejudice on his remaining IAC allegations in State Claims A, C, E, or F, primarily because those allegations challenged trial counsel's strategic decisions, which Mr. Bledsoe had reasonably explained in his affidavit. *See id.* at 6–9 (State Claim A); *id.* at 10–12 (State Claims C, E & F); Bledsoe Aff. ¶¶ A–G. Strategic decisions about how to prepare a case for trial, questioning witnesses, which legal issues to raise, and whether and when to present evidence are best "'left to the discretion of counsel and should not be second-guessed in habeas corpus.'" *Id.* at 7 (quoting *Morva v. Warden of the Sussex I State Prison*, 741 S.E.2d 781, 786 (Va. 2013) (citing *Strickland*, 466 U.S. at 689–90)).

The Virginia Supreme Court summarily dismissed Anderson's appeal from the circuit court's order in February 2022. *See* Resp't's Br. 3; Pet'r's Ex. 22, *Anderson v. Dir., Va. Dep't of Corrs.*, No. 210541, Order (Va. Feb. 8, 2022), ECF No. 1-1, at 136.

*

Anderson filed a second habeas petition in Washington County Circuit Court on February 22, 2021. *See* Resp't's Ex. D, *Anderson v. Dir., Va. Dep't of Corrs.*, No. CL 21-683, slip op. 1–4 (Washington Cnty. Cir. Ct. Sept. 2, 2021) (*Anderson III*), ECF No. 13-4. That petition alleged four grounds for relief:

> A.   that [Anderson's] counsel was ineffective for failing to exercise due diligence;
>
> B.   that there was insufficient evidence supporting his convictions;
>
> C.   that Code § 18.2-374.1:1 is unconstitutionally overbroad or vague; and
>
> D.   that his counsel was ineffective for failing to utilize a computer expert.

14

*Id.* at 3. The circuit court denied and dismissed Anderson's second petition as successive under Virginia Code § 8.01-654(B)(2), which requires a habeas petition to "contain all allegations the facts of which are known to petitioner at the time of filing" and instructs that "[n]o writ shall be granted on the basis of any allegation the facts of which petitioner had knowledge at the time of filing any previous petition." *See id.* at 4 (citing Va. Code § 8.01-654(B)(2)). Although Anderson claimed "he 'discovered' new facts after the filing of his [direct] appeal and the denial of his first habeas petition, he [did] not allege what those new facts are." *Id.* He also "rehashed arguments from his first habeas petition," *id.*, which the circuit court previously rejected, *see id.* at 2–3.

D.    *Federal Habeas Petition*

Anderson filed this § 2254 petition in May 2022. Pet., ECF No. 1. He alleges eighteen grounds for relief under federal law:

A.    The trial court's denial of Anderson's "motion to change counsel" violated his "right to counsel replacement for adequate representation[.]" Pet. 22 ¶ A; *see also id.* at 38, 44, 68.

B.    The trial court denied Anderson's motion for continuance. *Id.* at 22 ¶ B.

C.    Mr. Bledsoe's failure "to ut[i]lize private detective which was afforded" Anderson and to "ut[i]lize computer expert in computer crime [at] trial" violated Anderson's constitutional right to effective assistance of counsel. *Id.* ¶ C; *see also id.* at 26–27, 32, 36–37, 69–71, 74–75.

D.    Mr. Bledsoe "failed to cross examine witness Amanda Miller and due to negligence after realizing she testified [Anderson] had i-pads however did not among other questions [*sic*] relevant to the case (Nicholas Sybers)." *Id.* at 22 ¶ D (capitalization altered); *see also id.* at 30–31, 39, 70.

E.      Mr. Bledsoe "failed to subpoena other witnesses pertinent to trial after [Anderson] instructed [him] to do so." *Id.* at 22 ¶ E.

F.      Mr. Bledsoe did not enter Anderson's "work schedule into evidence." *Id.* ¶ F; *see also id.* at 78.

G.      Anderson "had no knowledge of child pornography on [the] device," and the "evidence demonstrated [Anderson] viewed legal pornography." *Id.* at 22 ¶ G; *see id.* at 33–34.

H.      Mr. Bledsoe "failed to exercise due diligent to adequately investigate and prepare [Anderson's] defense." *Id.* at 23 ¶ H.

I.      Mr. Bledsoe showed "ineffectiveness and unprofessionalism by making joking comments" when questioning a witness and "losing train of thought during trial proceedings." *Id.* ¶ I (spelling corrected); *see also id.* at 28–29, 35.

J.      Mr. Bledsoe did not give Anderson his "file[] and other relevant documents" that Anderson needed "to prepare [an] adequate habeas" petition. *Id.* at 23 ¶ J.

K.      Mr. Bledsoe failed to pursue "all legal remedies afforded his client under [the] constitution by not filing" a petition for writ of certiorari with the United States Supreme Court, which Mr. Bledsoe "stated" he would do if the Virginia Supreme Court denied Anderson's direct appeal, *see id.* ¶ K; *id.* at 31–32; Pet'r's Ex. 6, Letter from C. Bledsoe to D. Anderson (Sept. 22, 2021), ECF No. 1-1, at 10.

L.      Mr. Bledsoe violated standards of "professional conduct" because, despite "being shown by [Anderson] 'clear trial errors' and constitutional violations made by courts and [C]ommonwealth which prove [Anderson's] conviction unconstitutional," Mr. Bledsoe still "fail[ed] to do anything." Pet. 23 ¶ L; *see also id.* at 28.

M.     There "was insufficient evidence to support [Anderson's] conviction[s]" for knowingly possessing child pornography, Va. Code § 18.2-374.1:1, because all "images were 'deleted' and 'web searches' [were] not linked to <u>any</u> images in question, nor from illegal or child pornography, but [were] 'adult'" pornography from legal websites. *See* ECF No. 1, at 23 ¶ M. More specifically, Anderson asserts that:

1.     the "images [were] located in 'unallocated space' of damaged or 'corrupt files' of [the] hard drive [i]naccessible without 'special forensics software' which was never detected, installed, purchased, [or] subscribed [to] in any manner of form." *Id.* at 24 ¶ M(1).

2.     Anderson "did not violate the code" because the "Commonwealth's own witness stated[:] 'images considered deleted,' 'isn't part of the normal file structure,' 'floating around.' Additionally, [the] Commonwealth's Attorney asked [the] witness[,] 'And this is the extent you can retrieve deleted information.'" *Id.* ¶ M(2) (other quotation marks omitted); *see also id.* at 52–53.

3.     The Commonwealth's reliance on "[a]lleged [web] searches between February and August 2018 used to obtain indictments [was] unconstitutional and unlawful as <u>none</u> went to any of alleged images in [the] indictments, nor was any attempt made to verify as such. In fact <u>none</u> of the searches were proven to be illegal, child pornography in nature, [and] were testified to be 'pornography URLs' not illegal, but were used to pile inference upon inference to jury to convince jury that [Anderson] 'knowingly' possessed images which were deleted.'" *Id.* at 24 ¶ M(3); *see id.* at 51, 56, 60–62, 67, 73, 75.

4.     "[C]onstitutionally[,] the mere presence of 'deleted' images fails to prove

17

beyond a reasonable doubt [Anderson] 'knowingly possessed <u>any</u> of the images in question." *Id.* at 25 ¶ M(4); *see also id.* at 52–53, 56.

5.      The "[e]vidence submitted at trial <u>does</u> <u>not</u> conform with the statute [because] the images were not found on [Anderson's] computer accessible, but were discovered in 'unallocated space' by Detective Blevins which took 'special forensic software' to 'retrieve' 'deleted' images." *Id.* at 25 ¶ M(5).

Anderson asserts that "all grounds for relief" raised in his § 2254 petition have "been presented to the highest state court having jurisdiction." Pet. 12. He asks this federal court to release him from state custody, expunge his convictions and vacate his prison sentences, order him removed from Virginia's Sex Offender Registry, and order a "new trial." *Id.* at 15.

*

Respondent filed a Rule 5 Answer and Motion to Dismiss addressing Anderson's allegations. The Commonwealth argues that Anderson is not entitled to relief on any claim the Virginia courts rejected on the merits (Claims C, E, F, G, J, and parts of Claim M(1)–(5)) because he has not shown that any such decision "was (1) contrary to, or an unreasonable application of, a clearly established United States Supreme Court decision, or (2) based on an unreasonable determination of facts" considering the evidence presented in the State court proceeding. R. 5 Answer 8; *see* 28 U.S.C. § 2254(d)(1)–(2). The Commonwealth also notes Anderson's § 2254 petition raises several claims that he never presented in state court. It argues those new claims, while technically "exhausted," are procedurally barred from federal habeas review because Anderson did not raise them on direct appeal (Claims A, B, and parts of Claim M(1)–(5)), or in his first state habeas petition filed in June 2020 (Claims D, H, I, K & L), and Anderson has not shown either cause to excuse that failure and/or prejudice from the alleged constitutional

18

violation. *See* R. 5 Answer 9–11, 14–15, 18–19, 21–23. Respondent asks the Court to dismiss Anderson's petition in its entirety.

### III. Discussion

*A.     Exhaustion*

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin*, 541 U.S. at 29. To properly exhaust, the petitioner "must 'fairly present' his claim in each appropriate state court" so as to "alert[] that court of the federal nature of the claim." *Id.* "Fair presentation" means that "both the operative facts and the controlling legal principles" behind a specific federal habeas claim were "presented face-up and squarely," *Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir. 2004), to "every available state court," *Jones v. Sussex I State Prison*, 591 F.3d 707, 713 (4th Cir. 2010). *See Gray v. Netherland*, 518 U.S. 152, 162–63 (1996) ("[F]or purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief" under federal law). The petitioner bears the burden of proving proper exhaustion on a claim-by-claim basis. *Jones*, 591 F.3d at 713.

Anderson properly exhausted Claim G's insufficient-evidence argument on direct appeal. The Virginia Court of Appeals rejected Anderson's assertions that he "had no knowledge" there was child (as opposed to adult) pornography on his laptop and that the "evidence demonstrated [Anderson] viewed legal pornography," Pet. 22 ¶ G. *See Anderson I*, slip op. 3, 6–7. The Virginia Supreme Court summarily denied Anderson's appeal from that decision. Accordingly, the Court of Appeals' reasoning will be reviewed under § 2254(d). *See Wilson v. Sellers*, 138 S. Ct. 1188,

1193–94 (2018); *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

Anderson properly exhausted the IAC allegations in Claims C, E, F, and J in his first state habeas petition. *Compare* Pet. 22 ¶¶ C, E–F, J, *with Anderson II*, slip op. 5–16. The circuit court rejected those claims on the merits applying *Strickland*'s familiar two-part standard, and the Virginia Supreme Court summarily refused Anderson's appeal from that decision, Pet'r's Ex. 22. Accordingly, the circuit court's reasoning will be reviewed under § 2254(d). *Grueninger v. Dir., Va. Dep't of Corrs.*, 813 F.3d 517, 525 (4th Cir. 2016) (citing *Brumfield v. Cain*, 576 U.S. 305, 313 (2015); *Ylst*, 501 U.S. at 803).

\*

In Claim M, Anderson asserts the evidence presented at trial was "insufficient" to convict him of knowingly possessing child pornography, Va. Code § 18.2-374.1:1(A), because that evidence showed all "images were 'deleted'" from his laptop's "normal file structure" and retrieved from inaccessible "unallocated space" on the laptop's hard drive, and the evidence of Anderson's "'web searches' [were] not linked to any images" used to convict him. Pet. 24–25 ¶ M; *see also id.* at 24–24 ¶ M(1)–(5); *id.* at 51–53, 56, 60–62, 67, 73, 75. Anderson asserts that he "presented" this claim to the Virginia Supreme Court before filing his § 2254 petition. Pet. 12. The Commonwealth responds that Claim M(1)–(5) is exhausted only "[t]o the extent" that Anderson challenged "the sufficiency of the evidence on direct appeal[.]" Resp't's Br. 23. "To the extent that the arguments presented in this [§ 2254] petition differ from those raised on direct appeal, those [sub]claims are not exhausted, but they are technically exhausted and procedurally defaulted because Anderson cannot raise them now." *Id.* (citing Va. Code § 19.2-400; *Slayton*, 205 S.E.2d at 682).

Anderson did not properly exhaust Claim M(1)–(5) as that claim is presented in his § 2254

petition. *Cf. Folkes*, 34 F.5th at 266–67 (concluding that claims presented § 2254 petition, which were copied verbatim from petitioner's state habeas filings, "did not adequately plead a failure to consult claim" and holding that the district court impermissibly expanded petitioner's IAC "claim premised upon counsel's failure to *file* a discretionary appeal" to include a separate claim "that counsel was also deficient in failing" to consult petitioner about filing that appeal). Anderson's insufficient-evidence argument on direct appeal focused on whether, under *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002), a jury may find that a person depicted in an image was under 18 years old simply by observing the person's appearance, or whether *Ashcroft* requires the Commonwealth to produce "corroborating" evidence to prove the person was a minor. *See generally Anderson I*, slip op. 1, 4–7; *accord* Pet'r's Ex. 8, Bledsoe Aff. ¶¶ A, F, G. Here, the facts supporting Claim M focus on whether a jury may find that a defendant "knowingly' possessed" a digital image previously stored on the defendant's computer when it is undisputed that the image had been "deleted" from that computer's "normal file structure" and moved to "unallocated space" that could not be accessed without "special forensic software." Pet. 24–25 ¶ M(1)–(5) (emphasis omitted). Anderson's first state habeas petition did present one "claim[] that he did not know the [deleted] images were on the computer," *Anderson II*, slip op. 13; *see id.* at 4 (State Claim I), but the circuit court could not discern "what trial error," if any, Anderson challenged in that claim, *id.* at 13–14. "To the extent that this claim assert[ed] any sort of evidentiary error, such a claim would be procedurally barred." *Id.* at 14 (citing *Slayton*, 205 S.E.2d at 682). Accordingly, Anderson did not properly exhaust Claim M(1)–(5).

B.    *Procedural Default*

A separate obstacle to federal-habeas review—procedural default—arises when a § 2254 claim "meets the technical requirements for exhaustion," *Coleman*, 501 U.S. at 732; *see* 28

U.S.C. § 2254(b)(1), "because the prisoner failed to abide by a state procedural rule," *Martinez v. Ryan*, 566 U.S. 1, 9 (2012). A § 2254 claim may be procedurally defaulted where: (a) the petitioner presented the claim, but the "state court declined to hear [it] because the [petitioner] failed to abide by a state procedural rule," *Martinez*, 566 U.S. at 9; or (b) the petitioner did not present the claim to the state's highest court, but it is "clear that the claim would be procedurally barred under state law if the petitioner attempted" to do so now, *Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000). *See George v. Angelone*, 901 F. Supp. 1070, 1076 (E.D. Va. 1995) ("[W]here the state court is not given the opportunity to apply its procedural bar, a federal court is bound to bar the claim where . . . application of the bar is clear." (citing *Coleman*, 501 U.S. at 735 n.*)). In either scenario, the State must show that "the relied-on procedural bar," *Jones*, 591 F.3d at 716, "provides an independent and adequate ground for the dismissal," *id.* at 715. "A state rule is 'adequate' if it is firmly established and regularly or consistently applied by the state court" in "cases that are procedurally analogous" to the petitioner's case, *id.* at 716, and it is "'independent' if it does not 'depend on a federal constitutional ruling,'" *Brown v. Lee*, 319 F.3d 162, 169 (4th Cir. 2003) (brackets omitted) (quoting *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985)).

A federal habeas court cannot review a procedurally defaulted claim "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law," or that the federal court's refusal to consider the claim "will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 749–50. The cause-and-prejudice standard "requires the petitioner to show that some objective factor external to the defense impeded counsel's [or the pro se litigant's] efforts to raise the claim in state court"[6] and "actual prejudice

---

[6] Ordinarily, the fact that a § 2254 petitioner represented himself in his "initial-review" state post-conviction proceeding will not "provide cause for a procedural default in a federal habeas proceeding." *See Martinez*, 566 U.S. at 9–11. However, there is a "narrow exception" where: (1) the potentially defaulted claim alleges ineffective assistance of trial counsel; (2) "under state law, claims of ineffective

resulting from the errors of which he complains." *McCleskey v. Zant*, 499 U.S. 467, 493–94 (1991). A fundamental miscarriage of justice occurs where a constitutional violation "probably resulted in the conviction of one who is actually innocent" of the crimes for which he is incarcerated. *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *Prieto v. Zook*, 791 F.3d 465, 469 (4th Cir. 2015). "To rely successfully on an actual innocence claim as a procedural gateway to assert an otherwise defaulted claim," *Sparrow v. Dir., Dep't of Corrs.*, 439 F. Supp. 2d 584, 588 (E.D. Va. 2006), the petitioner must "offer 'new reliable evidence . . . that was not presented at trial,'" and "'show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence,'" *Royal v. Taylor*, 188 F.3d 239, 244 (4th Cir. 1999) (quoting *Schlup v. Delo*, 513 U.S. 298, 321 (1995)). *See Sparrow*, 439 F. Supp. 2d at 588 (citing *Royal*, 188 F.3d at 243–44). "Actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 615 (1998). This actual-innocence exception "is demanding and permits review [of defaulted claims] only in the extraordinary case." *House v. Bell*, 547 U.S. 518, 538 (2006) (quotation marks omitted).

    *1.    Claims Found Defaulted in State Habeas Proceedings (A & H)*

    Anderson raised Claim A, alleging that the circuit court violated his right to counsel by denying his pro se motion to replace Mr. Bledsoe days before trial started, in his first state habeas petition. The circuit court found this claim was procedurally barred under *Slayton* because Anderson could have raised it on direct appeal, but he did not. *Anderson II*, slip op. 6

---

assistance of trial counsel must be raised in an initial-review collateral proceeding"; *and* (3) "there was no counsel" representing the petitioner "in the initial-review collateral proceeding . . . or counsel in that proceeding was ineffective." *Id.* at 18; *see also Davila v. Davis*, 137 S. Ct. 2058, 2065 (2017) (holding that *Martinez* applies only in "those 'limited circumstances'" where the defaulted claim meets all three criteria and does not apply to any other "procedurally defaulted claims" (quoting *Martinez*, 566 U.S. at 16)). "To overcome the default, [the petitioner] must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one," meaning "the claim has some merit," *Martinez*, 566 U.S. at 14, under *Strickland*'s familiar two-part standard, *see Sigmon v. Stirling*, 956 F.3d 183, 199 (4th Cir. 2020).

(citing *Slayton*, 205 S.E.2d at 682). Anderson "does not dispute, nor could he, that *Slayton* is an independent and adequate state ground," *Burket v. Angelone*, 208 F.3d 172, 189 (4th Cir. 2000), that bars review of the circuit court's alleged trial error, *see O'Dell v. Netherland*, 95 F.3d 1214, 1239–40 (4th Cir. 1996) (noting that *Slayton* "bars the consideration on habeas of trial errors that could be, but were not, raised on direct appeal" and concluding that the "district court properly held that [petitioner's] claims were procedurally barred from review on federal habeas"). *See* Pet'r's Resp. 2–4, ECF No. 19. "As such, [Claim A] is procedurally defaulted, and [Anderson] is ineligible for relief unless" he "establishes either cause and prejudice for the default or that the default would yield a fundamental miscarriage of justice." *Zook*, 791 F.3d at 469 (quotation marks omitted).

Although Anderson asserts that he "can show cause under this standard," he does not explain why Mr. Bledsoe did not challenge the trial court's ruling on direct appeal. Pet'r's Resp. 3. To the extent Anderson addresses the cause-and-prejudice exception at all, he attempts to replead Claim A as "an ineffective assistance of counsel claim[]" that generally expresses his dissatisfaction with Mr. Bledsoe's alleged "fail[ure] to abide by and follow any of [Anderson's] requests before and during trial proceedings." *Id.* ("Ineffective assistance of counsel claims are not waived by failure to raise [o]n direct appeal, as issues may not be fully developed until after appeal."). Accordingly, Anderson has not shown cause (or prejudice) to excuse his default. *See Samples v. Ballard*, 860 F.3d 266, 276 (4th Cir. 2017). He does not address the actual-innocence exception. *See* Pet'r's Resp. 3. Thus, Claim A is procedurally defaulted under *Slayton* and will be dismissed with prejudice.

Anderson initially raised Claim H, alleging that Mr. Bledsoe was ineffective because he "failed to exercise due diligence to adequately investigate and prepare [a] defense," Pet. 23 ¶ H,

in his second state habeas petition. *See Anderson III*, slip op. 3. The circuit court found this claim was barred under Virginia Code § 8.01-654(B)(2), which generally limits prisoners to one habeas petition and precludes state courts from granting habeas relief "on the basis of any allegation the facts of which [the] petitioner had knowledge at the time of filing any previous petition." *Id.* at 4 (quoting Va. Code § 8.01-654(B)(2)). Section 8.01-654(B)(2) is "an independent and adequate state-law ground" where, as here, the petitioner "knew of the grounds" supporting his § 2254 "claim when he filed his first [habeas] petition" in state court," but failed to include it. *Gray*, 518 U.S. at 161–62 (holding that § 8.0-654(B)(2) was an independent and adequate state procedural rule barring federal habeas court from reviewing petitioner's *Brady* claim because petitioner was aware of the facts when he filed his first state habeas petition).

Anderson asserts that Claim H "is not barred as counsel['s] ineffectiveness was clearly shown in [the] hearing on November [6]th, when counsel stated[,] 'a lot of work to be done' not even 2 weeks before trial," and, at some point, Mr. Bledsoe "became biased in his theory and even closed-minded to anything [Anderson] said" to him. Pet'r's Resp. 9. None of this explains why Anderson's first habeas petition, which he filed pro se in June 2020, did not contain an IAC claim based specifically on Mr. Bledsoe's alleged failures to "exercise due diligence" or to "adequately investigate and prepare [a] defense" for trial in November 2019. On the contrary, it confirms Anderson knew about Claim H's underlying facts when he filed his first state habeas petition. *See Anderson III*, slip op. 4 (citing Va. Code § 8.01-654(B)(2)).

Even if Anderson's pro se status caused the default, however, he still must "demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one," meaning "the claim has some merit," *Martinez*, 566 U.S. at 14, under *Strickland*'s familiar two-part test,

*see Sigmon*, 956 F.3d at 199.[7] Anderson's unadorned assertion that Mr. Bledsoe "failed to exercise due diligence to adequately investigate and prepare [a] defense," Pet. 23 ¶ H, does "not ma[ke] out a substantial claim [either] that trial counsel performed deficiently," *Sigmon*, 956 F.3d at 199, or "that the deficiency prejudiced [Anderson's] defense,'" *id.* at 192 (quoting *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)). Indeed, Anderson does not identify the errors Mr. Bledsoe allegedly made when investigating and preparing Anderson's defense, let alone explain how those errors might have changed the outcome at trial. *See, e.g.*, *Orlina v. Clarke*, No. 1:22cv417, 2023 WL 300149, at *11–12 (E.D. Va. Jan. 17, 2023) (concluding *Martinez* did not save defaulted IAC claim, based on trial counsel's allegedly inadequate investigation and trial strategy, where petitioner "fail[ed] to provide any [factual] support" for the claim). Anderson does not mention the actual-innocence exception on this claim. *See* Pet'r's Resp. 9. Accordingly, Claim H is procedurally defaulted under § 8.01-654(B)(2) and will be dismissed with prejudice.

2.    *Claims Initially Raised in § 2254 Petition (B, D, I, K, L & M)*

Anderson's § 2245 petition raises six new claims for relief: Claim B (trial court denied motion for continuance); Claim D (trial counsel ineffective because he did not cross-examine Amanda Miller about the specific brand of tablet computer Anderson owned); Claim I (trial counsel acted "unprofessionally" by "joking" and losing his train of thought in court); Claim K (counsel ineffective because he did not seek review by U.S. Supreme Court); Claim L (trial counsel ineffective because he did not object to "clear trial errors" and "constitutional violations"); and Claim M (insufficient evidence to support convictions because "deleted"

---

[7] "Because state prisoners in Virginia cannot raise ineffective-assistance claims on direct appeal and because" Anderson filed his initial state habeas petition pro se, Anderson's failure to include Claim H in his initial-review collateral proceeding puts the claim "squarely in *Martinez* territory." *Cf. Morva v. Zook*, 821 F.3d 517, 533 (4th Cir. 2016) (finding the same where capital defendant's "state post-conviction counsel failed to challenge [trial] counsel's stipulation" to a fact that established an essential element of offense).

images were found in "unallocated space" and "web searches" were not linked to any image used to convict him). Each claim "may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if [Anderson] attempted to present it to the state court." *Baker*, 220 F.3d at 288 (citing *Gray*, 518 U.S. at 161). If "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for [Anderson's] conviction and sentence," however, that bar "prevents federal habeas review of the defaulted claim unless [Anderson] can demonstrate cause and prejudice for the default," *Gray*, 518 U.S. at 162, or that the federal court's refusal to consider the defaulted claim "will result in a fundamental miscarriage of justice," *Coleman*, 501 U.S. at 750.

Claim B and Claim M are clearly barred under *Slayton* because they allege non-jurisdictional trial errors that Anderson could have raised on direct appeal, but did not. *See, e.g.*, *Williams v. Clarke*, No. 1:22cv1108, 2023 WL 2696204, at *3–4 & n.2 (E.D. Va. Mar. 28, 2023) (*Slayton* barred federal review of claim challenging trial court's ruling raised for the first time in § 2254 petition); *Masika v. Chesapeake Cir. Ct.*, No. 3:16cv1006, 2018 WL 1079575, at *4–5 (E.D. Va. Feb. 27, 2018) (*Slayton* barred federal review of new § 2254 claims challenging prisoner's underlying convictions); *McNeil v. Watson*, No. 1:14cv322, 2014 WL 5324898, at *2 (E.D. Va. Oct. 17, 2014) (*Slayton* barred federal review of new § 2254 claim challenging sufficiency of the evidence). Anderson's three new claims alleging ineffective assistance of *trial* counsel (Claims D, I & L) are clearly barred under § 8.01-654(B)(2) because he knew about the underlying facts in June 2020, but he did not include those claims in his first state habeas petition. *See, e.g.*, *Williams*, 2023 WL 2696204, at *6 (concluding that § 8.01-654(B)(2) barred federal review of IAC claims raised for the first time in § 2254 petition).

Anderson could not have raised Claim K, alleging that Mr. Bledsoe was ineffective

because he did not file a petition for writ certiorari with the U.S. Supreme Court after the Virginia Supreme Court rejected his direct appeal in August 2021, in his first or second state habeas petitions, which Anderson filed pro se in June 2020 and February 2021, respectively. *See* Resp't's Br. 21. Anderson realized Mr. Bledsoe's failure in December 2021, when, despite recently promising to "immediately" appeal Anderson's case to the U.S. Supreme Court if the Virginia Supreme Court denied his petition for rehearing, Pet'r's Ex. 6 (Sept. 22, 2021), Mr. Bledsoe informed Anderson that he had "taken this case as far as [he] can" and ended his representation. Pet'r's Ex. 25 (Dec. 15, 2021). If Anderson tried to raise this IAC claim now, it would be procedurally barred by Virginia Code § 8.01-654(A)(2), which requires any petition for writ of habeas corpus, "other than a petition challenging a criminal conviction or sentence, [to] be brought within one year after the cause of action accrues." *See, e.g.*, *Compton v. Clarke*, No. 7:21cv524, 2023 WL 2695132, at *4 (W.D. Va. Mar. 29, 2023) (applying § 8.01-654(A)(2)'s one-year limitations period to find that petitioner's IAC claim, based on his attorney's alleged failure to appear at a May 2021 hearing, would be procedurally barred if he tried to raise it in Virginia state court); *Haas v. Lee*, 560 S.E.2d 256, 257–59 (Va. 2002) (holding that § 8.01-645(A)(2)'s one-year limitations period applied to state habeas claim alleging ineffective assistance of trial counsel).

This Court cannot review Claims B, D, I, K, L, or M unless Anderson shows, on a claim-by-claim basis, "cause and prejudice for the default" or that default "will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 749–50. Anderson's response does not adequately address either exception for Claim B, *see* Pet'r's Resp. 4–5, which simply states that "the trial court denied [a] motion for continuance," Pet. 22 ¶ B. Claim B is procedurally defaulted under *Slayton* and will be dismissed with prejudice.

28

As for Claim D, alleging Mr. Bledsoe was ineffective because he did not cross-examine Amanda Miller after she falsely testified that Anderson owned i-Pad tablets, Pet. 22, 30, 70; Pet'r's Resp. 7–8, Anderson's response addresses only the actual-innocence exception, Pet'r's Resp. 7–8. To use this exception "as a procedural gateway to assert [his] otherwise defaulted [IAC] claim," *Sparrow*, 439 F. Supp. 2d at 588, Anderson must *both* "offer 'new reliable evidence . . . that was not presented at trial,'" *and* "'show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence,'" *Royal*, 188 F.3d at 244 (quoting *Schlup*, 513 U.S. at 321). On the first requirement, Anderson alleges that, had Mr. Bledsoe "questioned Ms. Miller confirming the device [sic] she would have been shown to have mislead jury [*sic*] as [Anderson] had no i-Pads, he only had [a] Samsung tablet." Pet'r's Resp. 7. He has not submitted any reliable evidence, such as affidavit from Ms. Miller stating how she would have testified, to corroborate his allegation. On the second requirement, Anderson believes that, had the jury realized Ms. Miller lied about the brand of tablet she recalled seeing in Anderson's former residence, Ms. Miller's testimony would have "shown [his] actual innocence of the charges in question." *Id.* at 7–8.

"Absent a specific proffer [showing] what favorable evidence or information would have been produced had [Mr. Bledsoe] preformed adequately, [Anderson's] claim of ineffective assistance of counsel does not provide a basis for federal habeas relief." *Miller v. Johnson*, No. 3:10cv646, 2011 WL 2413951, at *10 (E.D. Va. June 10, 2011) (granting respondent's motion to dismiss § 2254 claim on this ground) (citing *Beaver v. Thompson*, 93 F.3d 1186, 1195 (4th Cir. 1996) ("[A]n allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced.")); *see also Everage v. Wright*, No. 1:13cv510, 2014 WL 4471443, at *11 (E.D. Va. Sept. 9, 2014) ("[W]here a

petitioner fails to proffer precisely what testimony a missing witness would have provided and to supply an affidavit verifying that proffer, he does not meet his burden to demonstrate that counsel's performance was ineffective." (citing *Makdessi v. Watson*, 682 F. Supp. 2d 633, 654 (E.D. Va. 2010)). Anderson also cannot show that "it is more likely than not that no reasonable juror would have convicted him," *Schlup*, 513 U.S. at 321, of knowingly possessing child pornography under § 18.2:374.1:1, if they heard Ms. Miller's alleged testimony. The jury convicted Anderson of possessing 31 images recovered off the hard drive from one of his laptop computers. *Anderson I*, slip op. 2–3, 6–7. Whether Anderson also owned a tablet computer and, if so, what brand of tablet, was simply irrelevant. *Cf. United States v. Courtade*, 929 F.3d 186, 193–94 (4th Cir. 2019) (federal habeas petitioner "failed to show that it is more likely than not that no reasonable juror would have convicted him" of knowingly possessing child pornography where the underlying "video objectively depict[ed] a lascivious exhibition" of teenage girl showering, such that "no probing of Courtade's subjective intent or any sustained examination of his motives" was necessary to uphold the jury's guilty verdict (quotation marks omitted)).

Anderson does not invoke *Martinez* to explain why Claim D was not in his first state habeas petition. *See* Pet'r's Resp. 7–8. Even if his pro se status caused the default, however, he "has not made out a substantial claim that trial counsel performed deficiently," *Sigmon*, 956 F.3d at 199, by not cross-examining Ms. Miller about what brand of tablet Anderson owned, or that there is a reasonable probability Anderson would not have been convicted but for that failure. *See, e.g.*, *Vandross v. Stirling*, 986 F.3d 442, 452 (4th Cir. 2021) (petitioner's failure to produce "specific proffer as to what [the] witness would have testified . . . . reduces any claim of prejudice to mere speculation and is fatal to his [IAC] claim" (cleaned up)). Accordingly, Claim D is procedurally defaulted under Virginia Code § 8.01-654(B)(2) and will be dismissed with

prejudice.

As for Claim I, alleging Mr. Bledsoe showed "ineffectiveness and unprofessionalism by making joking comments" when he questioned a witness and "losing train of thought during trial proceedings," Pet. 23 ¶ I; *see id.* at 28–29, Anderson appears to blame the default on the fact that he was "proceeding pro se as a layman" when he filed his first state habeas petition, Pet'r's Resp. 10. Assuming that's the case, Anderson's allegations that Mr. Bledsoe lost in train of thought and made "derogatory comments" in court—namely joking that "'whatever tickles you, tickles me'" and stating, "the images were [in] his opinion 'adults portraying children,'" Pet'r's Resp. 10; *accord* Pet. 28–29, 35—are too conclusory to state an IAC claim. *Cf. Orlina*, 2023 WL 300149, at *13–15 (concluding defaulted IAC claim, based on petitioner's allegations that his trial "attorney did not 'zealously' represent him because he was too friendly with the judge, the prosecutor, the detective, and the complaining witness; . . . he conflated his wife's name with the victim's; and he joked about not preparing for sentencing" was "conclusory in nature" and did not state a claim "under either prong of *Strickland*, much less a substantial claim that would satisfy *Martinez*"). Anderson does not address the actual-innocence exception on this claim. *See* Pet'r's Resp. 10. Accordingly, Claim I is procedurally defaulted under Virginia Code § 8.01-654(B)(2) and will be dismissed with prejudice.

As for Claim K, alleging Mr. Bledsoe was ineffective because he did not file a petition for writ of certiorari with the U.S. Supreme Court on direct appeal, Anderson does not explain why he did not present this claim to a Virginia habeas court before his one-year limitations period expired in December 2022. *See* Pet'r's Resp. 12–13. Even if Anderson showed cause for the default, however, he cannot show "actual prejudice" resulting from the alleged constitutional violation because "a criminal defendant does not have a constitutional right to counsel to pursue

discretionary . . . applications for review" in the U.S. Supreme Court. *Wainwright v. Torna*, 455 U.S. 586, 587 (1982) (per curiam) (citing *Ross v. Moffitt*, 417 U.S. 600 (1974)). Given that Anderson "had no constitutional right to counsel" at this stage, "he could not be deprived of the effective assistance of counsel," *id.*, when Mr. Bledsoe broke his promise to appeal Anderson's convictions to the U.S. Supreme Court. *See Folkes*, 34 F.4th at 274 (citing *Torna*, 455 U.S. at 587–88); *Geiger v. United States*, No. 2:05cv166, 2007 WL 518437, at *5 (S.D. W. Va. Feb. 12, 2007). Anderson does not address the actual-innocence exception on this claim. Accordingly, Claim K is procedurally defaulted under § 8.01-654(A)(2) and will be dismissed with prejudice.

Finally, as for Claim M's new insufficient-evidence theory, alleging that the jury could not convict Anderson of knowingly possessing images that had been "deleted" from his laptop's "normal file structure" and were recovered from effectively inaccessible "unallocated space" on that device's hard drive, Anderson appears to argue the claim is defaulted because Mr. Bledsoe "refused" Andersons's specific "instructi[ons]" to pursue this theory on direct appeal. *See* Pet'r's Resp. 14–15. Thus, he asks the Court to let Claim M proceed under *Martinez*. That exception applies only to claims alleging ineffective assistance of *trial* counsel that were defaulted, as relevant here, because state law required such IAC claims to be raised in an initial habeas petition and the prisoner filed his initial state habeas petitioner pro se. *See Davila*, 137 S. Ct. at 2065–66. It does not apply to any other procedurally defaulted claims. *Id.* Anderson's § 2254 petition does not raise an IAC claim based on Mr. Bledsoe's failure to pursue this specific insufficient-evidence theory on direct appeal. *See generally Folkes*, 34 F.4th at 263, 268–69. Even if it did, such an IAC claim would challenge Mr. Bledsoe's performance as Anderson's *appellate* counsel, not his *trial* counsel, and therefore fall outside *Martinez*'s narrow exception. *See Davila*, 137 S. Ct. at 2067–68. Accordingly, Claim M is procedurally defaulted under

*Slayton* and will be dismissed with prejudice.

C.      *Claims Adjudicated on the Merits (Claims C, E, F, G & J)*

Finally, the Court reviews the Virginia Court of Appeals' decision rejecting the merits of Anderson's insufficient-evidence argument in Claim G on direct appeal, *see Anderson I*, slip op. 3, 6–7, as well as the initial habeas court's decision rejecting the merits of Anderson's IAC allegations in Claims C, E, F, and J, *Anderson II*, slip op. 6–12, 13–14, under § 2254(d)(1)–(2). *See Wilson*, 138 S. Ct. at 1193–94; *Grueninger*, 813 F.3d at 525 (citing *Ylst*, 501 U.S. at 803). Section 2254(d) permits habeas relief only if the state court's adjudication of a federal-law claim "resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the [U.S.] Supreme Court," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2). "This is a difficult to meet and highly deferential standard for evaluating state court rulings [and it] demands that state-court decisions be given the benefit of the doubt." *Cullen*, 563 U.S. at 181 (cleaned up). "In essence, to obtain federal habeas relief [under § 2254] 'a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement.'" *Sigmon*, 956 F.3d at 191 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

1.      *Insufficient Evidence (Claim G)*

Anderson's sole argument on direct appeal focused on whether the Commonwealth produced enough evidence to prove beyond a reasonable doubt that Anderson knowingly possessed 31 images depicting "actual minors" engaged in sexual activity, *see Anderson I*, slip

op. 4–5, 6–7, where Anderson maintained that he viewed only pornography depicting people who were "all eighteen" or older, *see id.* at 3. In *Jackson v. Virginia*, 443 U.S. 307 (1979), the U.S. Supreme Court "held that a state prisoner is entitled to habeas corpus relief if a federal judge finds that 'upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.'" *McDaniel v. Brown*, 558 U.S. 120, 121 (2010) (per curiam) (quoting *Jackson*, 443 U.S. at 324); *accord Cavazos v. Smith*, 565 U.S. 1, 7 (2011) (per curiam) ("*Jackson* says that evidence is sufficient to support a conviction so long as 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" (quoting *Jackson*, 443 U.S. at 319)). Under § 2254(d)(1), however, the federal court cannot grant such relief unless the prisoner *also* shows the state court's decision rejecting his insufficient-evidence claim involved an "objectively unreasonable" application of *Jackson*'s already deferential "no rational factfinder" standard. *See Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam).

The Virginia Court of Appeals's decision rejecting Anderson's insufficient-evidence claim on direct appeal had two distinct, but related, components. First, it identified the quality or amount of evidence necessary for the Commonwealth to prove beyond a reasonable doubt that an image "depicted 'actual' minors." *See Anderson I*, slip op. 4–5. Virginia law permits a factfinder to "infer[] by text, title or appearance that a person who is depicted as or presents the appearance of being less than 18 years of age" is, in fact, a minor. *Id.* at 4 (quoting Va. Code § 18.2-374.1:1(F)). Anderson had argued that "'*Ashcroft* imposes a constitutional requirement [in certain cases] that the Commonwealth introduce additional corroborative evidence' demonstrating that the images depicted 'actual' minors 'as opposed to adult actors'" who merely looked like minors, *id.* at 4–5. Applying that argument in his own case, Anderson maintained that "because the persons in the

images" underpinning "his convictions 'on all counts'" "did not appear to 'fall into a marked extreme' of age, the jury could not reasonably infer from the images alone that the persons depicted were younger than eighteen." *Id.* at 4 (brackets omitted). The Court of Appeals rejected Anderson's constitutional argument. It held instead that "§ 18.2-374.1:1(F)'s permissive inference . . . simply allows what the common law has always permitted—i.e., the Commonwealth to prove its case with circumstantial evidence." *Id.* at 5; *see id.* at 4 ("Indeed, it is well-established that a fact-finder may determine that the subject of an image is a minor by mere visual examination."). "Regardless of whether the Commonwealth presents direct or circumstantial evidence however, it must still prove that an image depicts an 'actual' minor." *Id.* at 6. "A jury may determine whether pornographic images depict actual minors simply by looking at the images and considering the appearance of the person depicted." *Id.* (quotation marks omitted). "To the extent that the subjects are not 'obviously' under the age of eighteen, or the defendant presents 'rebuttal' evidence suggesting that the subjects are adults, the matter becomes a question of fact for the jury." *Id.* Anderson's § 2254 petition does not challenge this aspect of the state court's decision. *See* Pet. 22–25, 51–53; *cf. Coleman*, 566 U.S. at 655 ("Under *Jackson*, federal courts must look to state law for 'the substantive elements of the criminal offense,' 443 U.S.[] at 324, n.16, but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law."); *Folkes*, 34 F.4th at 267 ("[A] federal court reviews only the claims presented in the § 2254 petition.").

Second, the Virginia Court of Appeals upheld each of Anderson's "conviction[s] under its construction" of § 18.2-374.1:1, *Toghill v. Clarke*, 877 F.3d 547, 556 (4th Cir. 2017), applying the well-established *Jackson* standard, *see Anderson I*, slip op. 1–2, 5–7. In doing so, it noted Blevins's testimony "that each of the [40] images taken from [Anderson's] laptop depicted 'what

appeared to be young males under the age of 18 engaged in sexual activity or displaying nudity.'"
*Id.* at 6. "The images largely depict[ed] persons without pubic, body, or facial hair. Many of the
persons ha[d] small arms and legs and narrow hips and shoulders, indicating that they had not yet
reached puberty." *Id.* at 6 (footnote omitted). And, while "some of the individuals depicted
appear[ed] to be markedly younger than others, the record demonstrate[d] that the jury examined
each of the forty photos and [found] that thirty-one of them depicted minors." *Id.* Notably, the
jury acquitted Anderson on three counts linked to images "depict[ing] individuals with pubic
hair." *Id.* at 6 n.3. The court also cited Anderson's "internet search history [showing] that he
frequently searched for pornography using the keyword, 'boys.'" *Id.* at 6. Finally, "[w]hile several
of the images came from websites with disclaimers that the models were over the age of eighteen,
Blevins explained that those disclaimers [were] not always accurate." *Id.* at 6–7. "[T]hree of the
websites could not be located or had been 'rerouted' due to 'law enforcement interaction.'" *Id.* at
7. "Furthermore, the jury, which had the opportunity to view the [actual] images, was not required
to believe the websites' disclaimers." *Id.* at 7. Nor was the jury required to credit Anderson's post-
arrest comment to Justin that the "teenboys.com" website he had visited "was all eighteen. *See
id.* at 3. "[A]fter considering all of the evidence" in a light most favorable to the Commonwealth,
the Virginia Court of Appeals court held "the jury was not plainly wrong in finding that the [31]
images depicted actual minors." *Id.*; *see id.* at 1–2.

*

"An objectively reasonable application of the *Jackson* standard requires that a reviewing
court 'faced with a record of historical facts that supports conflicting inferences must presume . .
. that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to
that resolution.'" *Williams v. Ozmint*, 494 F.3d 478, 490 (4th Cir. 2007) (quoting *Jackson*, 443

36

U.S. at 326); *see also Cavazos*, 565 U.S. at 7. Here, the Virginia Court of Appeals "pointed to evidence that supported the jury's determination," *Williams*, 494 F.3d at 490, that Anderson knowingly possessed 31 sexually explicit images depicting a real person younger than 18 years old, *see generally Anderson I*, slip op. 1, 4, 6–7. It noted that the forty images recovered from Anderson's laptop "largely depict[ed] persons without pubic, body, or facial hair. Many of the persons ha[d] small arms and legs and narrow hips and shoulders, indicating that they had not yet reached puberty." *Id.* at 6 (footnote omitted). "[T]he jury examined each of the forty photos and [found] that thirty-one of them depicted minors," *id.*, while acquitting Anderson on three charges linked to images depicting models with pubic hair. The court also cited Anderson's "internet search history [showing] that he frequently searched for pornography using the keyword, 'boys,'" *id.*, which could persuade a rational juror that Anderson was looking for pornography that depicted children rather than adults, even if none of the images underpinning Anderson's convictions were "linked" to those web searches. The Virginia Court of Appeals's "conclusion that there was sufficient circumstantial evidence to support the inference (and a finding beyond a reasonable doubt) that [all 31 images depicted actual minors] was not objectively unreasonable under the standards enunciated in *Jackson*." *Williams*, 494 F.3d at 490. Accordingly, Anderson's request for federal habeas relief on Claim G will be denied with prejudice.

## 2. *Ineffective Assistance of Trial Counsel (Claims C, E, F & J)*

Anderson's remaining claims challenge Mr. Bledsoe's failures "to ut[i]lize [a] private detective" and to retain a "computer expert in computer crime for trial," Pet. 22 ¶ C; *see also id.* at 26–27, 32, 36–37, 69–71, 74–75; his failure "to subpoena other witnesses pertinent to trial after [Anderson] instructed [him] to do so, *id.* at 22 ¶ E; his decision not to enter Anderson's work schedule into evidence at trial; *id.* ¶ F; *see also id.* at 78; and his failure to give Anderson his

client "file[] and other relevant documents" that Anderson needed "to prepare [an] adequate habeas" petition, *id.* at 23 ¶ J.

"The Sixth Amendment, applicable to the States by the terms of the Fourteenth Amendment, provides that the accused shall have the assistance of counsel in all criminal prosecutions." *Missouri v. Frye*, 566 U.S. 134, 138 (2012). "The right to counsel is the right to effective assistance of counsel," *id.*, "at all critical stages of the criminal proceedings," *id.* at 140 (quotation marks omitted), from a defendant's "first appearance before a judicial officer" where the State's criminal charges are announced, *Rothgery v. Gillespie Cnty, Tex.*, 554 U.S. 191, 194 (2008), through his "first appeal as of right" in state court, *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To establish a claim of ineffective assistance of counsel, a habeas petitioner must show that his attorney performed "deficiently" in an area where the petitioner's Sixth Amendment right to counsel had attached and that the deficiency "prejudiced" the petitioner's defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Texas v. Cobb*, 532 U.S. 162, 172–74 (2001) ("Although it is clear that the Sixth Amendment right to counsel attaches only to charged offenses," the right also "encompass[es] offenses that, even if not formally charged, would be considered the same offense" under the Fifth Amendment's Double Jeopardy Clause); *Coleman*, 501 U.S. at 752 ("There is no constitutional right to an attorney in state post-conviction proceedings.")

Under the "performance" prong, the petitioner must show counsel's performance fell outside the range of "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. For IAC claims challenging a trial attorney's alleged errors investigating, preparing, or trying the defendant's case, courts must evaluate the attorney's performance "from counsel's perspective at the time of the alleged error" and "apply a 'strong presumption' that trial counsel's

strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *United States v. Roane*, 378 F.3d 382, 404 (4th Cir. 2004) (quoting *Strickland*, 466 U.S. at 689). Under the "prejudice" prong, the petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

"When a state prisoner asks a federal court to set aside a [conviction or] sentence due to ineffective assistance of counsel," and a state court has rejected that request on the merits, the federal court must "use a doubly deferential standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt*, 571 U.S. at 15 (quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quotation marks omitted). "And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.* (citation omitted).

The circuit court rejected the IAC claims (State Claims A–E, F, J & K) that Anderson included in his first state habeas petition on the merits under *Strickland*'s familiar two-part standard. *See generally Anderson II*, slip op. 5–15. In his federal habeas petition, Anderson realleged the facts supporting State Claims A–B, D, F, and K as specific IAC claims that are now subject to review under § 2254(d). This Court cannot review State Claims C, E, or J, however, because Anderson did not plead any IAC claim in his § 2254 petition based on Mr. Bledsoe's specific failures "to cross-examine Justin Miller," *id.* at 4 ¶ C, "to enter phone calls between

Anderson and Miller into evidence" at trial, *id.* ¶ E, or "to investigate and verify that people in the images were 18 or older," *id.* ¶ J. *See Folkes*, 34 F.4th at 268–69.

As explained below, the circuit "court correctly recited the requirements of *Strickland* and correctly applied those requirements to the facts in the record" in rejecting Anderson's IAC claims on the merits. *Vandross*, 986 F.3d at 449. "In doing so, it also concluded correctly" that Anderson offered "no evidence" to show that, *id.*, but for any of Mr. Bledsoe's alleged errors, there is a reasonable probability that a juror "would have had a reasonable doubt respecting [Anderson's] guilt," *Strickland*, 446 U.S. at 695. "Simply, [Anderson] has not shown that the [circuit] court's decision was an unreasonable application of *Strickland*," *Vandross*, 986 F.3d at 449, based on "the record that was before the [circuit] court" in December 2020, *Cullen*, 563 U.S. at 181. Accordingly, Anderson's requests for federal habeas relief on Claims C, E, F, and J will be denied with prejudice.

### a. Claim C: Failure to Utilize Computer Expert & Investigator

Anderson has combined the substance of State Claims A and B, in which he alleged Mr. Bledsoe was ineffective because he failed to retain a computer expert for trial, *see Anderson II*, slip op. 6–9 (State Claim A), and failed to call an investigator as a witness, *id.* at 9 (State Claim B). Those two IAC claims now appear together in § 2254 Claim C, which challenges Mr. Bledsoe's failures to use a "private detective" or a "computer expert in computer crime [at] trial." Pet. 22 ¶ C; *see also id*. at 26–27, 32, 36–37, 69–71, 74–75. The circuit court rejected both IAC claims on the merits.

\*

As for Mr. Bledsoe's failure to retain a computer expert, the circuit court explained that Anderson had

> failed to carry his burden of demonstrating either deficient performance or
> prejudice. Anderson claim[ed] that had counsel retained a computer expert, the
> jury would have returned a 'not guilty' verdict, but he fail[ed] to explain what an
> expert would have testified to or how that would have led to a different outcome at
> trial. *See Teleguz v. Warden of the Sussex I State Prison*, 688 S.E.2d 865, 869
> ([Va.] 2010) (finding petitioner failed to carry *Strickland* burden where petitioner
> failed to attach affidavits from potential witnesses or state what they would have
> testified to).

*Anderson II*, slip op. 7 (other citations omitted). Moreover, to the extent Anderson challenged Mr.

Bledsoe's "decision not to retain a computer expert for trial, such a decision is an area of trial

strategy 'left to the discretion of counsel and should not be second-guessed in habeas corpus.'" *Id.*

(quoting *Morva*, 516 S.E.2d at 786). The circuit court also credited Mr. Bledsoe's affidavit, in

which he explained that because "Anderson had agreed to counsel's suggested trial strategy of

challenging" § 18.2-374.1:1(F)'s "appearance alone" language on First Amendment grounds,

counsel determined that "a computer expert would not assist in this defense." *Id.* (citing Bledsoe

Aff. ¶ A); *see also id.* at 14 ("Moreover, Anderson's strategy at trial was not to litigate the age of

the people in the images, but to challenge whether the jury could determine by appearance alone

[that] the images depicted minors.").

 Anderson's objection to Mr. Bledsoe not utilizing the "private detective [who] was

afforded" to Anderson, Pet. 22 ¶ C, appears to be based on Anderson's opinion that Mr. Bledsoe

should have used the investigator to defend him against the child pornography charges, and not

just the sexual-battery charges that had been severed for trial, *see* Bledsoe Aff. ¶ A ("Not Client's

opinion," handwritten in margin). The circuit court rejected Anderson's assertion that Mr. Bledsoe

was ineffective because he "failed to call an investigator as a witness at trial" because Anderson

did not "allege what the investigator would have said. Without such a proffer, Anderson cannot

demonstrate deficient performance or prejudice." *Anderson II*, slip op. 9. The court also credited

Mr. Bledsoe's explanation that the "investigator was retained specifically to address charges of

sexual battery which were the subject of a separate proceeding." *Id.* (citing Bledsoe Aff. ¶ A ("The private investigator was never utilized nor in Counsel's opinion needed" to prepare "[a]ny challenge to the pornographic material. . . . The investigator was retained to address charges of sexual battery by [Anderson] of minor children left in his care. Those charges were severed from the original indictment into separate trials for a later date.")).

The circuit court correctly applied *Strickland* in concluding that Anderson "failed to prove the requisite prejudice for [both] ineffective assistance of counsel claim[s]." *Vandross*, 986 F.3d at 452. "When a petitioner's ineffective assistance of counsel claim rests on trial counsel's failure to call a particular witness, expert or otherwise, [the Fourth Circuit] require[s] a specific proffer as to what [the] witness would have testified." *Id.* (cleaned up). Anderson's failure to produce such evidence "reduce[d] any claim of prejudice to mere speculation and [was] fatal to his claim[s]." *Id.* (cleaned up). The circuit court also reasonably concluded that, to the extent Anderson alleged Mr. Bledsoe's failures to retain a computer expert or private investigator satisfied *Strickland*'s performance prong, Mr. Bledsoe's decisions fell within "an area of trial strategy left to the discretion of counsel and should not be second-guessed in habeas corpus," *Anderson II*, slip op. 7 (quotation marks omitted). *See, e.g.*, *Valentino v. Clarke*, 972 F.3d 560, 581–82 (4th Cir. 2020). Accordingly, § 2254(d) forecloses Anderson's ability to obtain federal habeas relief on Claim C. *See Vandross*, 986 F.3d at 452–53; *Valentino*, 972 F.3d at 581–82.

> b.    *Claim E: Failure to Subpoena Witnesses*

The substance of State Claim D, alleging that Mr. Bledsoe "was ineffective for failing to call neighbors and other residents of [Anderson's] home," *Anderson II*, slip op. 10, is not expressly included as a specific ground for relief in Anderson's § 2254 petition. *See generally* Pet. 22–25. In § 2254 Claim E, however, Anderson alleges that Mr. Bledsoe was ineffective because

he "failed to subpoena other witnesses pertinent to trial after [Anderson] instructed [him] to do so." Pet. 22 ¶ E. It appears Anderson wanted Mr. Bledsoe to subpoena potential witnesses who had access to his home. *See id.* at 73. The Commonwealth concedes that "Anderson presented [Claim E] to the circuit court [as] State Claim D in his first habeas petition," Reps't's Br. 15, but argues Anderson cannot show he is entitled to habeas relief on Claim E under § 2254(d)'s deferential standard, *see id.* at 16–17.

The circuit court held Anderson "failed to carry his *Strickland* burden" because he did not produce "any affidavits from any of the[] potential witnesses" who Mr. Bledsoe should have called to testify. *Anderson II*, slip op. 10. "Moreover, counsel's decision to call a witness is a matter of trial strategy better left to the discretion of counsel. In his affidavit, counsel state[d] that Anderson had admitted to viewing pornographic images on the [laptop] computer, and the testimony of these witnesses may have been more harmful than beneficial. Counsel is not required to present evidence that may well backfire." *Id.* at 10–11 (citing Bledsoe Aff. ¶ B). The circuit court correctly applied *Strickland* in reaching both conclusions. *See Vandross*, 986 F.3d at 452–53; *Valentino*, 972 F.3d at 581–82. Accordingly, § 2254(d) forecloses Anderson's ability to obtain federal habeas relief on Claim E.

   *c.*  *Claim F: Work Schedule*

State Claim F, alleging Mr. Bledsoe was ineffective because he did not enter Anderson's work schedule into evidence, is also Claim F in the § 2254 petition. The circuit court rejected that IAC claim under *Strickland*'s prejudice prong because "Anderson's work schedule ha[d] no bearing on whether or not he [knowingly] possessed images depicting child pornography on the laptop." *Anderson II*, slip op. 12. This was correct. Put simply, Mr. Bledsoe's failure to introduce evidence that was not relevant to Anderson's guilt under § 18.2:374.1:1, and therefore likely was

not admissible in evidence under Virginia law, *see* Va. Sup. Ct. R. 2:402(a), cannot undermine confidence in the jury's guilty verdicts. *See, e.g.*, *Goins v. Warden, Perry Corr. Inst.*, 576 F. App'x 167, 173 (4th Cir. 2014) ("Appellant was not prejudiced within the meaning of *Strickland* when his trial counsel failed to make an attempt to introduce inadmissible evidence.").

### d.    Claim J: Discovery Materials

Finally, State Claim K, alleging Mr. Bledsoe was ineffective because he did not give Anderson unspecified discovery materials, *see Anderson II*, slip op. 15, is now § 2554 Claim J, in which Anderson clarifies that those materials included his client "file[] and other relevant documents" that he needed "to prepare [an] adequate habeas" petition, *see* Pet. 23 ¶ J. The circuit court held that Anderson "failed to carry his *Strickland* burden because he [did] not allege any item that counsel failed to show him." *Anderson II*, slip op. 15. This was correct in light of the record before the circuit court. *See Cullen*, 563 U.S. at 181. Under § 2254(d), Anderson cannot supplement his IAC claim on federal habeas review. *See id.* at 182; *Vandross*, 986 F.3d at 452.

### IV. Conclusion

For the foregoing reasons, Respondent's Motion to Dismiss, ECF No. 11, is **GRANTED** and Anderson's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254, ECF No. 1, is **DENIED and DISMISSED with prejudice**. More specifically, Claims A, B, D, and H, I, K, L, and M(1)–(5) are dismissed because they are procedurally defaulted on adequate and independent state law grounds, and Anderson has not established an exception that would allow this Court to review those defaulted claims on the merits. Claims C, E, F, G, and J are denied because the state-court decisions rejecting those federal claims on the merits were based on objectively reasonable factual determinations considering the evidence presented in state court, and were neither contrary to, nor involved an unreasonable application of the constitutional

standards enunciated in *Jackson v. Virginia*, 443 U.S. 307 (1979) (Claim G), or *Strickland v. Washington*, 466 U.S. 668 (1984) (Claims C, E, F & J).

ENTER: September 30, 2023

Joel C. Hoppe
United States Magistrate Judge